**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**P.P.G. INDUSTRIES, INCORPORATED, and Glaziers Union Local 1204, AFL–CIO, Respondents.**

No. 77–1754.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1978.

Decided June 30, 1978.

Jay Shanklin, Washington, D. C., for petitioner.

Walter F. Kelly, Milwaukee, Wis., Hugh M. Finneran, Pittsburgh, Pa., for respondents.

Before CASTLE, Senior Circuit Judge, and SWYGERT and WOOD, Circuit Judges.

CASTLE, Senior Circuit Judge.

This action involves charges of unfair labor practices by two employees against both their employer and their union. As explained fully in the decision of the administrative law judge (ALJ), these charges stem from a dispute over whether the employees were entitled to riding time and mileage expenses pursuant to a collective bargaining agreement between the employer (P.P.G.) and the Union. The ALJ dismissed the complaints against both P.P.G. and the Union concluding that the General Counsel of the National Labor Relations Board (Board) had not proven violations of the National Labor Relations Act by a preponderance of the evidence. The Board, while stating that it agreed with the ALJ's factual findings, reached the opposite conclusion, that the Union had violated § 8(b)(1)(A) by failing to fairly process the employees' grievances and that the P.P.G. had violated § 8(a)(1) and (3) by refusing to rehire the employees from a layoff after they had filed the grievances with the Union. The Board brought this petition for enforcement pursuant to § 10(e). We deny enforcement and adopt the opinion of the ALJ.[1]

## I.

 We begin by noting that we must defer to the Board's findings when they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e). While this standard of review does not change when the Board reaches a conclusion different from that reached by the ALJ, the Supreme Court has noted that evidence supporting the Board's conclusion may be viewed as being "less substantial" in such circumstances *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Thus, where the Board and ALJ disagree, we must examine the evidence more closely to determine if it is substantial. *NLRB v. Colonial Haven Nursing Home, Inc.,* 542 F.2d 691, 703 (7th Cir. 1976); *NLRB v. Interboro Contractors,*

---

1. The Board's opinion is reported at 229 N.L.R.B. No. 107. The decision of the ALJ is attached thereto.

388 F.2d 495, 499 (2d Cir. 1967). Close scrutiny of the Board's decision is especially warranted where the ALJ's contrary conclusions are based upon the credibility of the witnesses. *NLRB v. Colonial Haven Nursing Home, Inc., supra* at 703; 2 K.C. Davis, Administrative Law § 10.04 at 22 (1958).

## II.

■ Applying this standard of review, we find the Board's conclusion that the Union breached its duty of fair representation is not supported by substantial evidence. The Board first concluded that the Union demonstrated its improper motivation in refusing to arbitrate the claims of the two employees, Edward and Joseph Ponkow, by considering that the employees did not obtain the employment with P.P.G. through the Union and that, in accepting the jobs directly from P.P.G., the Ponkows agreed to forego reimbursement for riding time and mileage. In support of this conclusion, the Board points to one of the reasons given by the Executive Board of the Union for not proceeding to arbitrate the grievance: "had the business manager secured employment for the Ponkows they would have received riding time and mileage." (ALJ Opinion at 8.) While admitting that the Union has considerable discretion in deciding whether or not to process an employee's claim, the Board emphasizes that the Union must exercise the discretion in good faith and with honesty of purpose. *See Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). Since an employee cannot waive by individual contract any benefit in the collective contract, *J. I. Case Co. v. NLRB,* 321 U.S. 332, 338, 64 S.Ct. 576, 88 L.Ed. 762 (1944), and since it is a violation of § 8(b) for a union, absent contractual authority, to discriminate against an employee who was not referred to the employer by the union, *see NLRB v. Teamsters Local Union No. 676,* 419 F.2d 1274, 1275 (3d Cir. 1969), the Board concluded that the Executive Board's statement served no purpose other than indicating that the Union was retaliating against the Ponkows for not securing the jobs through the union business manager.

While we do not disagree with the abstract principles of law cited by the Board, those principles are not applicable to the facts here. The Board's conclusion is based upon the assumption that the Executive Board's statement proves that the Union felt the Ponkows' claim to be meritorious. 229 NLRB No. 107 at 8. This assumption is directly rebutted by the ALJ's finding that the Union believed there was a valid dispute regarding the application of the riding time and mileage provisions to the Ponkows' situation. Also, the ALJ cited testimony from the Union business manager, which was supported by the testimony of Joseph Ponkow, that when the Union secures a job for a member, the travel time and mileage questions are resolved initially. This evidence is exclusive support for the ALJ's conclusion that while the Union may have argued for riding time and mileage reimbursements for the Ponkows when they first began the jobs, declining to assume the expense of arbitrating a questionable grievance was a reasonable decision by the Union. The Board points to no evidence which supports its construction of the statement by the Union.

■ A second reason given by the Board for concluding that the Union violated its duty of fair representation was that the Union conceded to the employer that the Ponkows' claims were invalid during several prearbitration communications. While a union has a wide discretion in deciding whether to take a grievance to arbitration, *Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Ford Motor Co. v. Huffman, supra,* once the claim is taken to arbitration, the union must advocate the employee's position. *Kesner v. NLRB,* 532 F.2d 1169, 1174–75 (7th Cir.), *cert. denied,* 429 U.S. 983, 97 S.Ct. 499, 50 L.Ed.2d 593, 1022 (1976). We are not prepared to extend *Kesner* to require that union representatives adopt an adversary stance with the employer from the moment a claim is made by an employee. Such a rule would severely curtail the leeway given a union in representing all of its members and would inevitably lead to a breakdown in informal reso-

# 1060

lution of disputes. *See Vaca v. Sipes, supra*, 386 U.S. at 191, 87 S.Ct. 903. Thus, we find that the Board's conclusion that the Union violated § 8(b)(1)(A) by failing to take the employees' grievance to arbitration is not supported by substantial evidence on the record as a whole.

## III.

■ We also decline to enforce the Board's conclusion that P.P.G. violated § 8(a)(1) and (3) of the Act by refusing to rehire the Ponkows in July, 1976 after a layoff because they had filed grievances with the Union in June, 1976. In support of its conclusion, the Board points to the questionable timing of the decision not to rehire, the statement of P.P.G.'s Branch Manager that the Ponkows' grievances constituted "harassment" and the failure of P.P.G.'s job superintendent to determine if the Ponkows could safely perform the July, 1976 work.[2] The key question in determining whether the act has been violated in these circumstances is whether the employer's action was improperly motivated by the employee's union activities. *See NLRB v. Truck Drivers Union*, 353 U.S. 87, 77 S.Ct. 643, 1 L.Ed.2d 676 (1957). The ALJ found that the P.P.G. job superintendent, Branko Stanich, was solely responsible for manning this particular jobsite and that the only factor in his hiring decision was to obtain a "matched crew accustomed to handling large sections of plate glass with optimum skill and safety." (ALJ Opinion at 14.) The ALJ previously stated that he credited the testimony of Stanich because of the witness' "demeanor and candor." (ALJ Opinion at 10.) Regarding the subjective question of motivation, a conclusion by the ALJ which rests upon the credibility of the witnesses is entitled to considerable weight. *NLRB v. Colonial Haven Nursing Home, Inc., supra* at 703. Moreover, the factors cited by the Board are rebutted by several undisputed facts; (1) the July, 1976 rehir-

ing was of a temporary nature designed to handle a single shipment of large plate glass sent to P.P.G. in early July; (2) it was Stanich who was responsible for the hiring while Branch Manager Hudson made the statement concerning the Ponkows' "harassment;" (3) Stanich was aware of the Ponkows' reimbursement claims since October, 1975 yet rehired the two employees after layoffs at least twice between October, 1975 and July, 1976; and (4) Stanich offered to rehire the Ponkows in September, 1976. Therefore, we find that the Board's conclusion that P.P.G. violated § 8(a)(1) and (3) of the Act by refusing to rehire the Ponkows due to their protected grievance activity is not supported by substantial evidence on the record as a whole.

For the reasons stated above, the petition of the Board is hereby denied.

ENFORCEMENT DENIED.

---

2. The Board also claims that one of P.P.G.'s justifications for not rehiring the Ponkows, that it was committed to hire workers from another company, was "pretextual" and thus supports the conclusion that P.P.G. was improperly motivated in its decision not to rehire. There is no evidence that this commitment was ever ar-

gued by P.P.G. to be the basis of the July, 1976 hiring decision. Rather, the commitment was simply found to exist by the ALJ. While the Board may reject the findings of the ALJ when appropriate, such a rejection cannot be said to constitute evidence of the employer's bad faith.