94 P.3d 652

Lewis W. POE, Complainant/Appellant–Appellant,

v.

HAWAI'I LABOR RELATIONS BOARD, State of Hawai'i, Appellee–Appellee,

and

Benjamin J. Cayetano, Governor, State of Hawai'i, Respondent/Appellee–Appellee.

Lewis W. Poe, Complainant/Appellant–Appellant,

v.

Hawai'i Labor Relations Board, State of Hawai'i, Appellee–Appellee,

and

Benjamin J. Cayetano, Governor, State of Hawai'i, Respondent/Appellee–Appellee.

Lewis W. Poe, Complainant/Appellant–Appellant,

v.

Hawai'i Labor Relations Board, State of Hawai'i, Appellee–Appellee,

and

Davis Yogi, Director, Department of Human Resources Development, State of Hawai'i; Kazu Hayashida, Director, Department of Transportation, State of Hawai'i; Thomas Fujikawa, Harbors Administrator, State of Hawai'i, Respondents/Appellees–Appellees.

Lewis W. Poe, Complainant/Appellant–Appellant,

v.

Hawai'i Labor Relations Board, State of Hawai'i, Appellee–Appellee,

and

Kazu Hayashida, Director, Department of Transportation, State of Hawai'i, Respondent/Appellee–Appellee.

Lewis W. Poe, Complainant/Appellant–Appellant,

v.

Hawai'i Labor Relations Board, State of Hawai'i, Appellee–Appellee,

and

Davis Yogi, Director, Department of Human Resources Development, State of Hawai'i, Respondents/Appellees–Appellees.

No. 24073.

Supreme Court of Hawai'i.

July 21, 2004.

Lewis W. Poe, complainant/appellant-appellant, on the briefs, appearing pro se.

Valri Lei Kunimoto, Honolulu, on the briefs, for appellee-appellee Hawai'i Labor Relations Board.

Kathleen N.A. Watanabe and Sarah R. Hirakami, Deputy Attorneys General, on the briefs, for respondents/appellees-appellees.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

Complainant-appellant Lewis W. Poe appeals from the January 9, 2001 judgment of the Circuit Court of the First Circuit, the Honorable Eden Elizabeth Hifo presiding, affirming the dismissal of Poe's five consolidated prohibited practice complaints by appellee Hawai'i Labor Relations Board [hereinafter, HLRB or the Board]. On appeal, Poe contends that the circuit court erred in affirming the decision of the HLRB because the Board had incorrectly determined that Poe (1) failed to exhaust his remedies under

the applicable collective bargaining agreement and (2) failed to prove that his union, the Hawai'i Governmental Employees Association (HGEA) breached its duty of fair representation with respect to Poe's grievances. For the following reasons, we affirm the circuit court's decision.

## I. *BACKGROUND*

### A. *Facts*

Poe was employed by respondent-appellee State of Hawai'i (Employer) as a Tower Operator I at Aloha Tower. His duties included controlling the movement of marine traffic through Honolulu Harbor.

### 1. The Collective Bargaining Agreement

As a member of Bargaining Unit 3 (BU 03) of HGEA, Poe was bound by the terms of the collective bargaining agreement between Employer and HGEA. The Memorandum of Agreement appended to the collective bargaining agreement, in force from August 2, 1995 through the germane time periods in this case, stated in relevant part:

### ARTICLE 11—GRIEVANCE PROCEDURE

A. Any complaint by an Employee or the Union concerning the application and interpretation of this Agreement shall be subject to the grievance procedure....

B. An individual Employee may present a grievance [to the Employee's immediate supervisor, and have the grievance heard] without intervention of the Union, *up to and including Step 3,* provided the Union has been afforded an opportunity to be present at the [conference(s)] meeting(s) on the grievance....

C. Informal Step. A grievance shall, whenever possible, be discussed informally between the Employee and the immediate supervisor.... The [grievant] *Employee* may be assisted by a Union representative. If the immediate supervisor does not reply by seven (7) working days, the Employee or the Union may pursue the grievance to the next step.

D. Step 1. If the [grievant is not satisfied with the result of the informal conference] *grievance is not satisfactorily resolved at the informal step,* the [grievant] Employee or the Union may submit a written statement of the grievance within seven (7) working days after [receiving the answers] *receipt of the reply* to the informal complaint to the division head or designee....

A meeting *to discuss the grievance* shall be held (between the grievant and a Union representative with the division head or designee) within seven (7) working days after *receipt of* the written grievance [is received]....

E. Step 2. If the grievance is not satisfactorily resolved at Step 1, the [grievant] *Employee* or the Union may appeal the grievance in writing to the department head or designee within seven (7) working days after [receiving the written answer] *receipt of the reply at Step 1. ...*

A meeting to discuss the grievance shall be held within seven (7) working days after receipt of the appeal....

....

G. Step 3. If the grievance is not satisfactorily resolved at Step 2, the [grievant] *Employee* or the Union may appeal the grievance in writing to the Employer or designee within seven (7) working days after receipt of the [answer] *reply* at Step 2....

*A meeting to discuss the grievance shall be held within seven (7) working days after receipt of the appeal.* The Employer or designee shall reply in writing to the [grievant or] *Employee and* within seven (7) working days after the meeting.

H. Step 4. Arbitration. If the grievance is not *satisfactorily* resolved at Step 3 and the Union desires to proceed with arbitration, it shall serve written notice on the Employer or designated representative of its desire to arbitrate within (10) working days after receipt of the [Employer's decision] *reply* at Step 3....

(Internal brackets and underscoring in original.)

### 2. Poe's Grievances

Poe filed five grievances with his employer, alleging that the employer had violated the collective bargaining agreement in various ways. In every case, Poe, without the assistance of his union, pursued his grievances through Step 3 of the grievance procedure. Each time, Poe was not satisfied with the result. In one of the five grievances giving rise to the present appeal, Poe requested that his union sponsor his complaint at Step 4 arbitration. The union declined on the basis that Poe's grievance lacked merit. In the other four grievances, Poe did not request arbitration prior to filing suit.

### B. *Prior Proceedings*

Poe subsequently filed five prohibited practice complaints with the HLRB, based on the same collective bargaining agreement violations alleged in the grievance procedure.[1] Each of Poe's complaints were dismissed by the HLRB, essentially concluding each time that:

Complainant must exhaust his available contractual remedies prior to bringing a prohibited practice complaint against the Employer alleging a violation of the collective bargaining agreement. In order to maintain an action against his Employer alleging a breach of the collective bargaining agreement, Complainant must establish that the union breached its duty of fair representation in failing to pursue his grievance to arbitration. Absent such a claim, the Board hereby dismisses the instant complaint for failure to exhaust contractual remedies.

Poe then appealed to the circuit court, alleging that the HLRB erred because he had indeed exhausted his contractual remedies under the collective bargaining agreement. On October 19, 2000, the circuit court consolidated all of Poe's five complaints and affirmed each of the HLRB's dismissals in one order. Judgment was entered on January 9, 2001. Poe timely appealed on February 8, 2001.

---

1. Poe's five prohibited practice complaints were filed separately in Civil Nos. 00–1–1867, 00–1–1868, 00–1–2199, 00–1–2200, 00–1–2349. He alleged, *inter alia*, that the State had violated the

## II. *STANDARDS OF REVIEW*

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. *Steinberg v. Hoshijo*, 88 Hawai'i 10, 15, 960 P.2d 1218, 1223 (1998). Hawai'i Revised Statutes (HRS) § 91–14(g) (1993) provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"An agency's findings are not clearly erroneous and will be upheld if supported by reliable, probative and substantial evidence unless the reviewing court is left with a firm and definite conviction that a mistake has been made." *Kilauea Neighborhood Ass'n v. Land Use Comm'n*, 7 Haw.App. 227, 229–30, 751 P.2d 1031, 1034 (1988).

Conclusions of law are freely reviewable under a right/wrong standard. *Poe v. Hawai'i Labor Relations Bd.*, 97 Hawai'i 528, 535, 40 P.3d 930, 937 (2002) [hereinafter, *Poe I*].

## III. *DISCUSSION*

Poe contends that the circuit court erred in affirming the decision of the HLRB because the Board incorrectly determined

CBA in subjects such as overpayment in night differential pay, break times during work shifts, requiring use of a computer at work, and failure to respond to information.

that Poe had failed to exhaust his remedies under the collective bargaining agreement. HLRB and Employer argue, *inter alia*, that Poe's suit was barred because he failed to prove that HGEA breached its duty of fair representation in not advancing Poe's claims through Step 3 arbitration.

This court has used federal precedent to guide its interpretation of state public employment law. *Hokama v. Univ. of Hawai'i*, 92 Hawai'i 268, 272 n. 5, 990 P.2d 1150, 1154 n. 5 (1999); *see also Poe I*, 97 Hawai'i at 536–37, 40 P.3d at 938–39; *Santos v. State Dep't. of Transp.*, 64 Haw. 648, 655, 646 P.2d 962, 967 (1982). Based on federal precedent, we have held it "well-settled that an employee must exhaust any grievance ... procedures provided under a collective bargaining agreement before bringing a court action pursuant to the agreement." *Hokama*, 92 Hawai'i at 272, 990 P.2d at 1154 (citing, *inter alia*, *Santos*, 64 Haw. at 655, 646 P.2d at 967; *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163–64, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)). "The exhaustion requirement, first, preserves the integrity and autonomy of the collective bargaining process, allowing parties to develop their own uniform mechanism of dispute resolution. It also promotes judicial efficiency by encouraging the orderly and less time-consuming settlement of disputes through alternative means." *Hokama*, 92 Hawai'i at 272, 990 P.2d at 1154 (citations omitted).

█ The final stages of the grievance procedure in the instant case requires the union to advance the employee's claim. "A labor union is charged with the duty of protecting the interests of its members as a group, and a union's interests are therefore broader than those of any one of its members." *Taylor v. Southwestern Bell Tel. Co.*, 251 F.3d 735, 741 (8th Cir.2001) (citing *United States v. White*, 322 U.S. 694, 701–02, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)); *see also* HRS § 89–8 (1993) (providing that the union, as the exclusive representative "shall have the right to act for and negotiate agreements covering all employees in the unit and shall be responsible for representing the interests of all such employees without

discrimination and without regard to employee organization membership[ ]"). "When the interest of members of the bargaining unit are not identical, a union may be unable to achieve complete satisfaction of everyone. It is granted a 'wide range of reasonableness' so long as it acts with 'complete good faith and honesty of purpose.'" *Smith v. Local 7898, United Steelworkers of Am.*, 834 F.2d 93, 96 (4th Cir.1987) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)). Thus, an employee does not have an absolute right to have the union pursue his or her claims in the grievance process. *Vaca*, 386 U.S. at 191, 87 S.Ct. 903. As the Supreme Court observed:

Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement.... In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. Through this settlement process, frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures. Moreover, both sides are assured that similar complaints will be treated consistently, and major problem areas in the interpretation of the collective bargaining contract can be isolated and perhaps resolved. And finally, the settlement process furthers the interest of the union as statutory agent and as coauthor of the bargaining agreement in representing the employees in the enforcement of that agreement.

If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule,

a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully.

*Id.* at 191–92 (footnote and citations omitted).

However, when the union wrongfully refuses to pursue an individual grievance, the employee is not left without recourse. Exceptions to the exhaustion requirement exist, such as when pursuing the contractual remedy would be futile. *Poe I,* 97 Hawai'i at 536–37, 40 P.3d at 938–39 (citing *Vaca,* 386 U.S. at 186, 87 S.Ct. 903; *Glover v. St. Louis–San Francisco Ry. Co.,* 393 U.S. 324, 330–31, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); *Am. Fed'n of Gov't Employees v. Paine,* 436 F.2d 882, 896 (D.C.Cir.1970)). In *Vaca,* the Supreme Court noted:

[A] situation when the employee may seek judicial enforcement of his contractual rights arises, if, as is true here, the union has sole power under the contract to invoke the higher stages of the grievance procedure, *and* if, as is alleged here, the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance. It is true that the employer in such a situation may have done nothing to prevent exhaustion of the exclusive contractual remedies to which he agreed in the collective bargaining agreement. But the employer has committed a wrongful discharge in breach of that agreement, a breach which could be remedied through the grievance process to the employee-plaintiff's benefit were it not for the union's breach of its statutory duty of fair representation to the employee. To leave the employee remediless in such circumstance would, in our opinion, be a great injustice....

For these reasons, we think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representa-

tion in its handling of the employee's grievance.

386 U.S. at 185–86, 87 S.Ct. 903 (emphases added) (citation omitted).

Thus, an employee who is prevented from exhausting the remedies provided by the collective bargaining agreement may, nevertheless, bring an action against his or her employer. Under federal precedent, such an action consists of two separate claims: (1) a claim against the employer alleging a breach of the collective bargaining agreement and (2) a claim against the union for breach of the duty of fair representation. *DelCostello,* 462 U.S. at 164, 103 S.Ct. 2281.

[T]he two claims are inextricably interdependent. To prevail against either the company or the Union, employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

*Id.* at 164–65, 103 S.Ct. 2281 (citation, brackets, quotation marks, and ellipsis points omitted); *see also DiGuilio v. Rhode Island Bhd. of Corr. Officers,* 819 A.2d 1271, 1273 (R.I. 2003) (without a showing that the union breached its duty of fair representation, the employee does not have any standing to contest the merits of his contract claim against the employer in court).

Other state jurisdictions also require that an employee prove the union breached its duty of fair representation in order to obtain a judicial remedy when a union declines to arbitrate an employee's grievance. *See, e.g., DiGuilio,* 819 A.2d at 1273; *Mahnke v. Wisconsin Employment Relations Comm'n,* 66 Wis.2d 524, 225 N.W.2d 617, 622–23 (1975). In *DiGuilio,* a senior employee nurse filed a grievance with her public employer, the Department of Corrections, over being wrongfully passed over for promotion in favor of a junior employee. 819 A.2d at 1272. Under the collective bargaining agreement, the union had the exclusive unilateral discretion to take a grievance to arbitration. *Id.* The employee requested that the union partici-

pate in arbitration on her behalf, and the union declined. *Id.* She then filed in action in court against her employer, recapitulating her grievance. *Id.* The employee did not allege or prove that her union breached its duty of fair representation. *Id.* at 1273. The Supreme Court of Rhode Island, adopting the federal rule outlined in *Hines [v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)], *Ayala [v. Union De Tronquistas De Puerto Rico,* 74 F.3d 344 (1 Cir. 1996)], and *DelCostello,* held that the employee had no standing to sue because she did not establish that the union's failure to arbitrate her grievance amounted to unfair representation. *Id.* at 1273–74; *accord Mahnke,* 225 N.W.2d at 623. The court stated that allowing the employee to sue would be contrary to the collective bargaining agreement's intent to set arbitration, invoked by the union, as the exclusive remedy for breach of contract grievances brought by an employee, thus having the undesirable effect of "tak[ing] decisions affecting the rights and status of union employees out of the hands of unions and arbitrators and plac[ing] them into the judicial forum." *DiGuilio,* 819 A.2d at 1273–74.

In *Poe I,* this court held that the HLRB erred in concluding that Poe had failed to exhaust his administrative remedies,[2] but went on to hold that, under the undisputed facts of the case, Poe was not entitled to any relief because the substance of his claims lacked merit. 97 Hawai'i at 538–39, 40 P.3d at 940–41. Although this court's opinion in *Poe I* cited federal cases for the proposition that exceptions to the exhaustion requirement exist, it had no occasion to address the requirement under federal law that the employee demonstrate that the union breached its duty of fair representation in order to bring a claim that the employer breached its duty of fair representation. However, this court has, in prior cases, alluded to the duty of fair representation. *Santos* concerned a

grievance by the appellant regarding the promotion of a co-worker:

At the heart of appellant's complaint is the allegation that the State wrongfully appointed [a co-worker] to the Equipment Operator IV position over appellant when appellant was more qualified, and that the UPW denied appellant fair representation, thus excusing appellant from resorting to the contractual grievance procedure before instituting an action in court.

64 Haw. at 654, 646 P.2d at 966. In determining that the appellant's claims on appeal were barred by collateral estoppel, this court noted that, "before [the Hawai'i Public Employment Relations Board (HPERB)] could act on a complaint against the State when the grievance procedures were not utilized, HPERB was required to and did properly consider whether the UPW had acted to deny appellant fair representation, thus, making resort to the grievance procedure an inadequate or futile remedy." *Id.* at 656–57, 646 P.2d at 968. Additionally, in *Poe I,* this court noted that, under *Vaca,*

a union member may bring suit when the union has the sole power under the contract to invoke the higher stages of the grievance procedure, *and the member is prevented from exhausting his or her contractual remedies by the unions wrongful refusal to process a grievance* [.]

97 Hawai'i at 536–37, 40 P.3d at 938–39 (emphasis added).

■ Based on analogous federal cases previously cited by this court and the policy considerations articulated in them, we hold that an employee who is prevented from exhausting his or her contractual remedies may bring an action against an employer for breach of a collective bargaining agreement "provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the

---

2. Specifically, this court stated:

[W]hen only the exclusive bargaining representative can elect to advance to the final grievance step, the employee exhausts his or her remedies at the point in the grievance procedure where the employee can no longer progress. Because Poe could move no further in the grievance procedure, he had exhausted his administrative remedies. Requiring him to repeatedly request the HGEA to pursue his grievance would be futile. Thus, the HLRB was wrong in concluding that Poe had failed to exhaust his administrative remedies.

97 Hawai'i at 538, 40 P.3d at 940 (citation omitted).

**104**

employee's grievance." *Vaca*, 386 U.S. at 186, 87 S.Ct. 903.

 A union breaches its duty of good faith when its conduct towards a member of a collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998); *Del-Costello*, 462 U.S. at 164, 103 S.Ct. 2281; *Vaca*, 386 U.S. at 190, 87 S.Ct. 903. Merely settling a grievance short of the arbitration process, without more, fails to establish a breach of the duty of fair representation. *Vaca*, 386 U.S. at 192, 87 S.Ct. 903.

In the present case, with respect to four of Poe's claims, he fails to establish that he was prevented from exhausting his contractual remedies because he did not request that HGEA advance those claims to Step 4 arbitration. With respect to Poe's fifth claim, he was prevented from exhausting his contractual remedies because HGEA denied his request to advance his grievance at arbitration. However, as in *DiGuilio*, Poe did not prove that his union breached its duty of fair representation, and, in fact, concedes that he cannot prove that the union breached this duty. Therefore, we hold that Poe lacked standing to pursue his claim before the HLRB. *See DiGuilio*, 819 A.2d at 1273–74.

### IV. *CONCLUSION*

Based on the foregoing, we conclude that Poe lacked standing to pursue his claim before the HLRB because he failed to demonstrate that his union breached the duty of fair representation. We, therefore, hold that the HLRB did not err in dismissing his claim because he failed to exhaust his contractual remedies. Accordingly, we affirm the circuit court's judgment affirming the HLRB.