**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000782
05-APR-2023
07:46 AM
Dkt. 105 MO**

NO. CAAP-18-0000782

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

NATHAN MAKINO, Complainant-Appellant-Appellant,
v.
COUNTY OF HAWAIʻI; UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO, Respondents-Appellees-Appellees,
and
HAWAIʻI LABOR RELATIONS BOARD, STATE OF HAWAIʻI (2015-009), Agency-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 3CC171000368)

**MEMORANDUM OPINION**
(By: Leonard, Presiding Judge, Hiraoka and Nakasone, JJ.)

In this secondary appeal, Complainant-Appellant-Appellant Nathan **Makino** appeals from the **Judgment** entered by the Circuit Court of the Third Circuit on September 12, 2018.[1] The circuit court affirmed a **Decision and Order** of Agency-Appellee Hawaiʻi Labor Relations Board (**HLRB** or the **Board**) in favor of Respondents-Appellees-Appellees **County** of Hawaiʻi and United Public Workers, AFSMCE, Local 646, AFL-CIO (**UPW**). For the reasons explained below, we affirm the circuit court's Judgment affirming the HLRB's Decision and Order.

---

[1] The Honorable Greg K. Nakamura presided.

## BACKGROUND

Makino worked for the County. He was a UPW member. On January 24, 2014, Makino and a co-worker were involved in a physical altercation while working. The County placed both workers on administrative leave. Makino contacted UPW; he was represented by business agent Alton **Nosaka**. The County investigated the incident and prepared a written report.

By letter dated March 11, 2014, the County informed Makino that his employment was being terminated effective March 14, 2014. UPW filed a grievance on Makino's behalf. The County denied the grievance. UPW filed a Step-2 grievance. The County denied the Step-2 grievance. Before commencing Step-3 (arbitration), UPW initiated settlement discussions with the County.

The HLRB ultimately made findings of fact concerning the settlement discussions, all of which were supported by substantial evidence in the record and were not clearly erroneous:

> Nosaka documented the communications and actions taken during his representation of Makino for the January 24, 2014 incident by written notes introduced into evidence, which with the oral testimony established the following facts:
>
> . . . .
>
> Nosaka spoke with the Mayor to find out if the process could be stopped, and Makino could get his job back. On March 6, 2014, Nosaka informed Makino of the discussion. . . .
>
> On March 10, 2014, Nosaka noted after speaking with the Mayor, who had consulted with his department heads:
>
>> Spoke to BK [Billy Kenoi]. Told me that Dept. was upset Makino lied & spoke about investigation when was told not to. He just making it harder for me. Maybe give them some time to cool off. I'll try again later. BK asked why I like them guys come back? They have family and it's a hardship while they're out now.
>
> By a March 11, 2014 letter . . . Makino was notified by the County of his dismissal from his employment as a Laborer II, effective March 14, 2014, and of his right to appeal the dismissal under the [UPW collective bargaining agreement]. . . .

. . . .

On April 6, 2014, Nosaka called the Mayor, but there was no answer.

On April 22, 2014, after a follow up call to the Mayor, Nosaka noted, "No news yet.  Still trying[.]"

On May 5, 2014, Nosaka made several notations regarding Makino's case.  His first entry indicated that the status of the case had not changed.  His second entry pertained to his communication of that status to Makino, who indicated his concern regarding his back pay:

> Talked to Makino.  Told him BK said it's going to be tough bringing him back, but BK still trying.  Still grumbling he was the victim and would take some back pay from the time he lost his job.  Some suspension.  Told him I can try ask for back pay, next time I talk to BK[.]

In his third entry, the Mayor responded to Nosaka in a conversation regarding back pay:

> Talked to BK about the back pay.  He said this guy crazy.  He admitted he choked the other guy.  He lied from the beginning.  BK was "pissed" if I convince the Dept. to bring him back we gotta really think about the back pay. . . .

. . . .

On August 22, 2014, Nosaka spoke with the Mayor, who proposed and inquired whether the Union might be interested in an LCA (last chance agreement).  Nosaka's response was that he would check because he didn't know what his bosses would say.  The Mayor further inquired regarding the case status, and Nosaka responded that the case was being processed for arbitration.  After inquiring whether the case could be "pulled back," and receiving Nosaka's assurance that, "[Y]es, anytime, he can pull it back," the Mayor told Nosaka to process the arbitration.

On August 25, 2014, Nosaka told Makino that he spoke to Kenoi, who asked if an LCA would work.  Nosaka asked Makino whether the Mayor's question regarding an LCA was worth exploring, and Makino's response was "anything but term."  Nosaka said that he would need approval from his bosses and get back to Makino.

On October 10, 2014, Nosaka informed Makino that there was "[n]o word yet from BK.  Will let him know as soon as [I] hear anything."

Nosaka did talk to his "bosses" about an LCA, and obtained approval to draft and submit the LCA to the Mayor.  UPW Division Director Loyna Kamakeeaina and [UPW State Director Dayton] Nakanelua reviewed and approved the LCA.

By letter dated November 7, 2014, UPW submitted Makino's grievance to arbitration. HLRB made these findings about what happened next:

On or about December 15, 2014, Nosaka spoke with Makino to get approval to submit the LCA to the Mayor requiring Makino to concede the back pay. Nosaka said that Makino had to consult with his wife, and his wife agreed. Nosaka noted:

[D]raft done. Waiting for a meeting with Billy. Without pay okay? he spoke to wife; she agree. No guarantee I told him. Not going to win in arb.

. . . .

On December 15, 2014, Nosaka met with and presented a proposed draft of the LCA for Makino to the Mayor and [County Department of Public Works Deputy Director Brandon] Gonzales. The Mayor did not indicate agreement to the proposal but stated that he would have HR and the corporation counsel review the LCA and get back to Nosaka. Nosaka noted:

Met with Billy Kenoi & B. Gonzales about . . . LCA. Billy said this is a very hard case to reconsider. B. Gonzales was silent.

After reviewing the LCA BK said he has to have HR look at it & corp counsel. But no promises. I told BK would be a great XMAS gift if he brought them back. They get families and they would really appreciate the reconsideration & second chance.

He said he'll get back to me.

Nosaka notified Makino of his meeting with the Mayor. . . .

. . . .

On March 6, 2015, Nosaka again met with the Mayor to discuss Makino's case. Nosaka noted that the Mayor preferred that Makino . . . resign rather than be terminated or "like a pardon" when the Mayor left office[.] . . .

Nosaka believed that the Mayor would pardon Makino before leaving office, which would also require agreement by his "bosses", so Makino could be reemployed by the County.

On March 10, 2015, Makino called Nosaka, who documented the conversation as follows:

Nathan Makino called.
Still trying to resolve case.
Billy looking at other options. He still has LCA.

4

These findings were also supported by substantial evidence in the record and were not clearly erroneous.

Makino wrote to UPW on March 10, 2015: "The only settlement that I will consider is that I be reinstated immediately and given full back pay with interest, from January 24, 2014 to the present. You can tell the County that I am taking this position because of the way I've been treated by the County."

By letter dated March 19, 2015, UPW informed Makino that it had decided not to pursue the arbitration because there was insufficient proof that the County violated the UPW collective bargaining agreement (**CBA**).

Makino filed a prohibited practice complaint with the HLRB, against the County and UPW, on April 20, 2015. An amended prohibited practice complaint was filed on May 9, 2016. On October 19, 2017, HLRB issued its Decision and Order dismissing the amended complaint.

Makino appealed to the circuit court on November 17, 2017. Makino's counsel moved to withdraw from the case on March 13, 2018. The motion was granted. Makino appeared self-represented at the circuit court hearing on June 19, 2018. The court affirmed the HLRB. Judgment was entered on September 12, 2018. This appeal followed.[2]

## STANDARD OF REVIEW

> Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. Hawaiʻi Revised Statutes (HRS) § 91-14(g) (1993) provides:

>> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

>> (1) In violation of constitutional or statutory provisions; or

---

[2] The lawyer who withdrew from representing Makino before the circuit court now represents Makino in this appeal.

5

>    (2) In excess of the statutory authority or jurisdiction of the agency; or
>
>    (3) Made upon unlawful procedure; or
>
>    (4) Affected by other error of law; or
>
>    (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
>    (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
>    An agency's findings are not clearly erroneous and will be upheld if supported by reliable, probative and substantial evidence unless the reviewing court is left with a firm and definite conviction that a mistake has been made.
>
>    Conclusions of law are freely reviewable under a right/wrong standard.

Poe v. Haw. Lab. Rels. Bd., 105 Hawaiʻi 97, 100, 94 P.3d 652, 655 (2004) (**Poe II**) (cleaned up). In addition, a mixed finding of fact and conclusion of law is reviewed under the "clearly erroneous" standard because the determination is dependent on the facts and circumstances of each individual case. Est. of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007). A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned. Id.

## DISCUSSION

Makino contends that UPW breached its duty of fair representation, and that the County violated the UPW CBA when it terminated his employment. Thus, this appeal is a hybrid action. See Poe II, 105 Hawaiʻi at 102, 94 P.3d at 657 (noting that employee prevented from exhausting remedies provided by collective bargaining agreement may sue employer for breach of collective bargaining agreement and union for breach of duty of fair representation); Lee v. United Public Workers, AFSCME, Local 646, 125 Hawaiʻi 317, 319, 260 P.3d 1135, 1137 (App. 2011) (referring to such a case as a "hybrid action"). In a hybrid action, to have standing to pursue a claim against an employer

for breach of a collective bargaining agreement, the employee must first prove that the labor union breached its duty of fair representation. Poe II, 105 Hawaiʻi at 103-04, 94 P.3d at 658-59. Accordingly, we first address HLRB's resolution of Makino's claim against UPW.

The HLRB found and concluded that Makino failed to carry his burden of proving that UPW breached its duty of fair representation. "A union breaches its duty of fair representation only when the union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Lee, 125 Hawaiʻi at 321, 260 P.3d at 1139 (cleaned up) (first citing Vaca v. Sipes, 386 U.S. 171, 190 (1967); and then citing Poe II, 105 Hawaiʻi at 104, 94 P.3d at 659 ("A union breaches its duty of good faith when its conduct towards a member of a collective bargaining unit is arbitrary, discriminatory, or in bad faith.")).

**(A)** On appeal, Makino argues that UPW's decision to withdraw from the Step-3 arbitration "was arbitrary because there was no 'rational basis' for its decision" and that "the Circuit Court and HLRB failed to hold . . . UPW accountable by producing or requiring proof of any 'rational basis' for its decision to abandon [Makino]'s arbitration." Makino's argument lacks merit.

After the County denied Makino's Step-2 grievance, the deadline for him to proceed to a Step-3 arbitration was August 30, 2014. On August 22, 2014, Mayor Kenoi asked Nosaka whether UPW would be interested in a last chance agreement. Nosaka needed approval from his bosses to submit a proposed last chance agreement. UPW and the County agreed to extend the Step-3 deadline to November 14, 2014.

UPW sent its arbitration notice to the County on November 7, 2014, a week before the extended deadline. At that time, UPW had approved a last chance agreement proposal that required that Makino forego his claim for back pay, but Makino had not yet agreed so the proposal had not been submitted to the County. The HLRB made the following findings, which were

7

supported by substantial evidence in the record and were not clearly erroneous:

> Makino admits in his Post-Hearing Brief that on July 25, 2014, [Nosaka] told him that the decision to go to arbitration was his "bosses" decision and not his and that "he didn't think his 'bosses' would take his case to arbitration"; that on or about August 14, 2014, [Nosaka] conveyed his doubts about going to arbitration; and that on August 27, 2014, [Nosaka] told [Makino] that if the County doesn't agree to settle his case, "we not going Arb (arbitration)".
>
> Further, the record shows that as early as January 29, 2014, Nosaka told Makino that "it did not look good. But we can go through the process. Step 1 & Step 2. Don't know if we going to arb[]" because "We lost a lot of UPW cases for less violence." On May 5, 2014, Nosaka told Makino that "BK said it's going to be tough bringing him back[.]" Nosaka participated and assisted Makino at the Step 1 and 2 grievance meetings, held on June 4, 2014 and July 25, 2014 respectively. Immediately after the Step 2 grievance on July 25, 2014, Nosaka communicated his concerns regarding whether the grievance would proceed to arbitration and told him that "maybe should try settling before Arb. Case" because of Nosaka's belief that "no think my bosses going to take this case to Arb. I can recommend but it's up to them." Mr. Makino obviously understood Nosaka's position that settlement should be pursued rather than arbitration based on his response to "try and talk to BK [Billy Kenoi]." Nosaka then replied that he was going to try and work it out with Kenoi because "We lost too much case[s] regarding WPV [work place violence][]" and further emphasized that "He's [Kenoi] is the only one can bring you back[.]" [Makino] again demonstrated his understanding by his response "to try." The August 14, 2014 conversation between Nosaka and Makino is, however, the most persuasive evidence for the UPW's position because Nosaka "told him [Makino] that the way it looks, and the history of losses we was [sic] not going Arb. The best chance is before Arb. I talk to Billy. He said 'ok.'" On August 27, 2014, Nosaka explicitly told Makino that, "if BK no agree [to the LCA] we not going to [arbitration]. BK is our last hope."

The record supports the inference that UPW demanded arbitration only to keep the grievance process alive while the parties were negotiating a possible settlement, which was Makino's "last hope." Thus, UPW's ultimate withdrawal from the arbitration after Makino revoked UPW's settlement authority (described below) was not arbitrary, discriminatory, or in bad faith.

On December 15, 2014, Makino told Nosaka he and his wife agreed to forego back pay, and Nosaka again told Makino he was not going to win the arbitration "because of the history of cases that the Union had lost in arbitration with less violence

than what occurred" in Makino's case.  Nosaka presented the proposed last chance agreement to Mayor Kenoi that same day.

By letter dated March 10, 2015, while settlement negotiations were ongoing, Makino recanted and informed UPW that he would not settle without being "reinstated immediately and given full back pay with interest[.]"  Nine days later, UPW State Director Dayton **Nakanelua** withdrew the arbitration demand "because there is insufficient proof that there is a violation of" the CBA.  The HLRB made the following findings, which were supported by substantial evidence in the record and were not clearly erroneous:

> [Makino] implies, but did not plead improper motive, based on his assertion of retaliation for pushing the resolution of his case and that no rational basis or explanation was given for the withdrawal of the arbitration demand.  The Board concurs with the UPW in this case that there was no proof of an improper motive by the Union in this case.  As fully discussed above, there was no evidence that Nosaka and the Union lied to Makino regarding the status of the LCA.  Further, as also fully discussed above, there was more than sufficient evidence that Nosaka informed [Makino] from the beginning of the grievance process that it was doubtful that the Union would proceed to the arbitration step; and accordingly, an LCA was the preferable approach. The Board also finds adequate proof in the record that the reasons for the Union's decision not to proceed to arbitration, which were communicated to Makino, were because of the UPW's history of losing work place violence cases and concerns regarding Makino's inconsistent statements made during the investigation and grievance process.  In short, [Makino] has failed to demonstrate that this alleged conduct by the UPW constituted "fraud, deceitful action, or dishonest conduct."  Hence, the Board holds that there is no merit to [Makino]'s position there was a breach of duty of fair representation based on the "bad faith" conduct of the UPW.
>
> For the reasons set forth above, [Makino] has failed to prove that the UPW breached its duty of fair representation, thereby wilfully violating HRS § 89-13(b)(l) and (4).

(Footnote omitted.)

Under the circumstances of this case, we conclude that the HLRB's combined findings and conclusions that Makino "failed to carry his burden of arbitrary conduct constituting a breach of the duty of fair representation" and "failed to prove that the

UPW breached its duty of fair representation" were not clearly erroneous.

(B)   Makino also argues that UPW breached its duty of fair representation because "[p]ursuing a grievance is fundamentally different from the legal duty the UPW voluntarily took on by deciding to take [Makino]'s case to arbitration." Citing Del Casal v. E. Air Lines, Inc., 465 F. Supp. 1254, 1258 (S.D. Fla. 1979), aff'd, 634 F.2d 295 (5th Cir. 1981), he asserts that the "general rule of law" is "while a union has a wide discretion in deciding whether to take a grievance to arbitration, once the claim is taken to arbitration, the union must advocate the employee's position."

Del Casal does not stand for the proposition that a union's duty of fair representation differs between grievance steps when arbitration is a grievance step under a collective bargaining agreement.  Del Casal was a pilot for Eastern Airlines.  The Airline Pilots Association, International (**ALPA**) was the exclusive bargaining agent for Eastern's pilots.  Del Casal twice applied for ALPA membership, but was rejected both times for incompetency as a pilot.  Eastern terminated Del Casal's employment on the ground that he was an incompetent and unsafe pilot.  Del Casal filed a grievance under the collective bargaining agreement between Eastern and ALPA.  Del Casal was assisted by an ALPA staff attorney.  His grievance was rejected at the initial stages.  He asked ALPA to submit his grievance to arbitration by the System Board.  ALPA's staff attorney initiated the arbitration.  But before the arbitration hearing, ALPA withdrew its staff attorney because Del Casal was not an ALPA member.  Del Casal retained private counsel for the hearing.  The System Board ruled that Eastern was justified in terminating Del Casal.

Del Casal then filed suit in federal district court, claiming (among other things) that ALPA breached its duty of fair representation.  The district court agreed, stating:

It is also true that ALPA has no duty to press claims before the System Board on behalf of grievants which it finds in good faith to be without merit. . . .

ALPA, however, did process [Del Casal]'s claim and presented it to the System Board. In N.L.R.B. v. P.P.G. Industries, Inc., 579 F.2d 1057, 1059 (7th Cir. 1978), it was recognized that "while a union has a wide discretion in deciding whether to take a grievance to arbitration, once the claim is taken to arbitration, the union must advocate the employee's position."

Furthermore, ALPA does provide attorneys to grievants at their hearings before the System Board. Indeed, it is clear . . . that [the ALPA staff attorney] would have represented [Del Casal] but for the fact that he was not a union member.

Del Casal, 465 F. Supp. at 1257-58 (some citations omitted).

ALPA appealed. The Seventh Circuit clarified:

The issue in this case is whether a union may refuse to represent a member of the bargaining unit on the ground that he is not a member of the union without violating its duty of fair representation. Thirty-five years ago this court established the principle that a union may not discriminate against members of its bargaining unit on the basis of that person's status as a nonmember of the union. Hughes Tool Co. v. NLRB, 147 F.2d 69 (5th Cir. 1945).

. . . .

In the instant case the appellee Del Casal argues that ALPA's discriminatory refusal to allow a staff attorney to represent him at the System Board hearing based upon his nonmember status constituted a breach of ALPA's duty to fairly represent him. We agree. The record shows that ALPA does provide attorneys to grievants at their hearings before the System Board. It is also clear from the record that . . . the ALPA staff attorney[] would have represented Del Casal but for the fact that he was not a union member. While ALPA has the authority to decide under what conditions an attorney will be supplied to a grievant, the fact that the grievant is not a member of the union can play no part in that decision.

Del Casal v. E. Airlines, Inc., 634 F.2d 295, 300-01 (5th Cir. 1981). Contrary to Makino's argument, both Del Casal opinions stand for the proposition that a union owes the same duty of fair representation at all steps of the grievance process, including arbitration.

The Fifth Circuit's Del Casal opinion did not cite P.P.G. Indus., which was quoted by the district court in the

11

portion of its opinion relied on by Makino.[3]  The district court's citation to P.P.G. Indus. was inapt for two reasons.  P.P.G. Indus. did not involve an arbitration, because the union's executive board unanimously agreed not to take the grievance to arbitration.  Thus, the P.P.G. Indus. court's statement that "once the claim is taken to arbitration, the union must advocate the employee's position" was dicta.

Second, the P.P.G. Indus. court cited Kesner v. Nat'l Lab. Rel. Bd., 532 F.2d 1169, 1174-75 (7th Cir. 1976), cert. denied, 429 U.S. 983 (1976), for the proposition that "once the claim is taken to arbitration, the union must advocate the employee's position."  P.P.G. Indus., 579 F.2d at 1059.  The facts of Kesner are contained in Truck Drivers, Oil Drivers and Filling Station and Platform Workers Local No. 705, 209 N.L.R.B. 292 (1974).[4]  Aaron Kesner was a truck driver for F&K.  He was a member of Local 705.  He was laid off.  One day he saw another driver, who had also been laid off, driving an F&K truck.  He complained to Local 705 that F&K violated the call-back seniority provisions of the union contract.  The union refused to file a grievance.  Kesner filed his own grievance.

Step 1 was a meeting with the employer.  Kesner and a Local 705 business representative named Heim met with an F&K manager.  Heim explained that Kesner did not have seniority over the called-back driver.  Heim declared the step-1 meeting a deadlock, triggering step 2 — a hearing before a Joint Grievance Board composed of both union and employer representatives.  During the hearing Heim stated that ruling that Kesner was entitled to a seniority call-back "would be contrary to the agreement and the practice in the industry and would generally upset labor relations in the area."  Truck Drivers, 209 N.L.R.B. at 299.  The board denied Kesner's grievance.  The union

---

[3]    Makino's briefs do not discuss the Fifth Circuit Del Casal opinion.

[4]    The case presented a multitude of facts that, while interesting, are not all relevant to Makino's appeal.  We recite only the relevant facts.

agreement did not provide for arbitration as a next step.  Id. at 304.

Kesner filed a complaint against Local 705 and F&K with the National Labor Relations Board (**NLRB**).  An administrative law judge found that Local 705 did not breach its duty of fair representation, and that F&K did not breach the union agreement. Kesner appealed.  The NLRB concluded that Local 705 breached its duty of fair representation:

> It is clear from the record that Heim, who attended the [Joint Grievance Board] meeting as spokesman for [Local 705] (and hence for Aaron Kesner), openly stated at that meeting that he believed that Kesner did not have a valid grievance. By making this statement, Heim in effect abdicated his duty to present the grievance in the light most favorable to Kesner.
>
> In our view, once [Local 705] undertook to present Aaron Kesner's grievance to the Joint Grievance Board, it became obligated to represent him fully and fairly.  This obligation included the duty to act as advocate for the grievant, which here Heim clearly did not do.  To the contrary, by saying that he did not believe Aaron Kesner's claim was valid, Heim undermined Kesner's case before the Joint Grievance Board.  In these circumstances, we are constrained to conclude and find, contrary to the Administrative Law Judge, that by this conduct [Local 705] breached its duty of fair representation and restrained and coerced Kesner in the exercise of his Section 7 rights, thereby violating Section 8(b)(1)(A) of the [National Labor Relations] Act.

Truck Drivers, 209 N.L.R.B. at 292-93.  The NLRB ordered that Local 705 cease and desist from failing or refusing to advocate members' positions in grievances heard by the Joint Grievance Board.  The NLRB agreed that F&K did not breach the union agreement.

Local 705 appealed.  The Seventh Circuit affirmed, stating:

> It is one thing for a grievant to attempt to pursue his remedy without assistance and opposed only by one adversary. When that situation is compounded by two opponents, one of whom is supposedly his "own people," the bearing on the likelihood of his success assumes substantial significance. When one's own representative who has been willing to assume that status proclaims a lack of merit, it is indeed likely to be a coup de grace to the claim.  The Board held that it was upon the facts of the case before us even though ultimately it was also determined that it was an unnecessary dagger.

> On the basis of the record in this case, it is our holding that the Board's conclusion that Local 705, through Business Agent Heim, breached its duty of fair representation by failing to meet the obligation it undertook of fully and fairly advocating Kesner's grievance must be sustained on the union's petition to review.

Kesner, 532 F.2d at 1175.

In this case, unlike in Kesner, Nosaka never took a position adverse to Makino before the County — even though UPW evaluated Makino's grievance as questionable because it had lost a number of arbitrations involving less serious allegations of workplace violence. To the contrary, the record indicates that Nosaka vigorously pursued a settlement on Makino's behalf, keeping his grievance alive by serving a Step-3 arbitration notice, until Makino rescinded settlement authority. At that point, UPW withdrew the arbitration notice because – as it had consistently maintained — there was insufficient proof that the County violated the CBA. See Vaca v. Sipes, 386 U.S. 171, 191 (1967) ("Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement."). HLRB's combined findings and conclusions that Makino "failed to carry his burden of arbitrary conduct constituting a breach of the duty of fair representation" and "failed to prove that the UPW breached its duty of fair representation" were not clearly erroneous.

Having failed to prove that UPW breached its duty of fair representation, Makino lacks standing to pursue a claim that the County breached the CBA. Poe II, 105 Hawaiʻi at 103-04, 94 P.3d at 658-59. Accordingly, we need not address Makino's other contentions on appeal.

14

<u>**CONCLUSION**</u>

For the foregoing reasons, the circuit court's Judgment entered on September 12, 2018, affirming the HLRB's Decision and Order of October 19, 2017, is affirmed.

DATED:  Honolulu, Hawaiʻi, April 5, 2023.

On the briefs:

Ted H. S. Hong,
for Complainant-Appellant-
Appellant Nathan Makino.

D. Kaena Horowitz,
Deputy Corporation Counsel,
County of Hawaiʻi,
for Respondent-Appellee-
Appellee County of Hawaiʻi.

Herbert R. Takahashi,
Rebecca L. Covert,
for Respondent-Appellee-
Appellee United Public
Workers, AFSCME, Local 646,
AFL-CIO.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

15