**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-22-0000339**
**14-FEB-2025**
**08:03 AM**
**Dkt. 84 MO**

NO. CAAP-22-0000339

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

In the Matter of VALERIE ASATO,
Complainant-Appellant/Appellant,
v.
HAWAII GOVERNMENT EMPLOYEES ASSOCIATION and
DEPARTMENT OF EDUCATION, STATE OF HAWAIʻI,
Respondents-Appellees/Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CCV-21-0000736)

MEMORANDUM OPINION
(By: Leonard, Acting Chief Judge, Nakasone, and McCullen, JJ.)

Complainant-Appellant-Appellant Valerie Asato (**Asato**) appeals from the May 13, 2022 Final Judgment (**Judgment**), entered by the Circuit Court of the First Circuit (**Circuit Court**).[1] Asato also challenges the April 18, 2022 Findings of Fact, Conclusions of Law, and Order Denying [Asato's] Agency Appeal, Filed on June 4, 2021 (**Order Denying Agency Appeal**).

I.    BACKGROUND

Asato was a member of Hawaii Government Employees

---

[1]    The Honorable James H. Ashford presided.

Association (**HGEA**), Bargaining Unit (**BU**) 03. The initial grievance underlying this appeal concerned Asato's termination from her employment by the State of Hawaiʻi, Department of Education (**DOE**), as an Office Assistant III at Farrington High School. On August 16, 2012, Asato's coworkers discovered emails on Asato's work computer containing discriminatory remarks about her coworkers based on race and sexual orientation, as well as comments wishing death on other employees and a student. On August 20, 2012, an administrative investigation was initiated. On December 17, 2012, upon the conclusion of the investigation, Asato was notified that she would be discharged from her position.

On January 14, 2013, HGEA filed with the Hawaiʻi Labor Relations Board (the **Board** or **HLRB**) a Step 1 Grievance pursuant to the grievance procedure set forth in Article 11 of the BU 03 Collective Bargaining Agreement (**CBA**).[2] HGEA

---

[2] Article 11(G) of the CBA provides:

G. Step 3. Arbitration. If the grievance is not resolved at Step 2 and the Union desires to proceed with arbitration, it shall serve written notice on the Employer or the Employer's representative of its desire to arbitrate within ten (10) working days after receipt of the Employer's decision at Step 2. Representatives of the parties shall attempt to select an Arbitrator immediately thereafter. If agreement on an Arbitrator is not reached within ten (10) working days after the notice for arbitration is submitted, either party may request the [HLRB] to submit a list of five (5) Arbitrators. Selection of an Arbitrator shall be made by each party alternately deleting one (1) name at a time from the list. The first party to delete a name shall be determined by lot. The person whose name remains on the list shall be designated the Arbitrator. No grievance may be arbitrated unless it involves an alleged violation of a specific term or provision of the Agreement.

If the Employer disputes the arbitrability of any grievance, the Arbitrator shall first determine whether the Arbitrator has jurisdiction to act; and if the Arbitrator finds that the Arbitrator has no such power, the grievance
(continued...)

challenged Asato's termination as a violation of Articles 3

(Maintenance of Rights and Benefits), 4 (Personnel Policy

Changes), 8 (Discipline), and 17 (Personal Rights and

Representation) of the Unit 03 CBA.  On February 12, 2013, HGEA

presented a Step 2 Grievance challenging Asato's termination.  On

June 30, 2015, a Step 2 meeting was conducted, and on September

24, 2015, the DOE denied the Step 2 Grievance.  On October 14,

2015, the union filed a Notice to Arbitrate.

On July 6, 2017, Asato filed a Prohibited Practice

---

[2](...continued)
shall be referred back to the parties without decision or
recommendation on its merits.

The Arbitrator shall render an award in writing no
later than thirty (30) calendar days after the conclusion of
the hearings or if oral hearings are waived then thirty (30)
calendar days from the date statements and proofs were
submitted to the Arbitrator.  The decision of the Arbitrator
shall be final and binding upon the Union, its members, the
Employees involved in the grievance and the Employer.  There
shall be no appeal from the Arbitrator's decision by either
party, if such decision is within the scope of the
Arbitrator's authority as described below:

1.  The Arbitrator shall not have the power to add to,
subtract from, disregard, alter, or modify any of the terms
of this Agreement.

2.  The Arbitrator's power shall be limited to
deciding whether the Employer has violated any of the terms
of this Agreement.

3.  The Arbitrator shall not consider any alleged
violations or charges other than those presented in Step 2.

4. In any case of suspension or discharge where the
Arbitrator finds such suspension or discharge was improper,
the Arbitrator may set aside, reduce or modify the action
taken by the Employer.  If the penalty is set aside, reduced
or otherwise changed, the Arbitrator may award back pay to
compensate the Employee, wholly or partially, for any wages
lost because of the penalty.

The fees of the Arbitrator, the cost of transcription,
and other necessary general costs, shall be shared equally
by the Employer and the Union.  Each party will pay the cost
of presenting its own case and the cost of any transcript
that it requests.

Complaint (**2017 PPC**) against HGEA alleging "dereliction of duty" because four-and-a-half-years had passed since her termination, and her grievance had not yet gone to arbitration.  On July 19, 2017, HGEA notified Asato that it was withdrawing the Notice of Intent to Arbitrate.  Asato then amended the 2017 PPC.  On May 2, 2018, the parties reached a settlement wherein HGEA agreed to arbitrate Asato's grievance and Asato agreed to a stipulated dismissal of the 2017 PPC.

HGEA took Asato's grievance to arbitration and selected Peter Trask, Esq. (**Trask**) to serve as its attorney for arbitration.  On December 10, 2018, Trask met with Asato and Sanford Chun (**Chun**), the HGEA executive assistant for field services, to prepare for the arbitration.

The disciplinary grievance went to arbitration in December of 2018.  Trask drove Asato to and from the arbitration proceedings.  During these car rides, Trask made comments to Asato, *inter alia*:  (1) that her previous HGEA agent was "lazy" and did things "half-assed;" (2) that sometimes the union "does stupid things," and Trask has to clean up the union's mess; (3) questioning Asato on whether she was continuing to pay union dues during the arbitration; (4) that if the case had been brought to Trask six years ago, he would have rejected the case and recommended no arbitration based on the merits; (5) that the chances of winning were low; (6) that Trask was not Asato's private attorney; (7) that he would not answer Asato's legal questions on what can she do in actions unrelated to the

4

arbitration; and (8) that she should not give him scenarios or ask general questions unrelated to the arbitration.  Asato later asserted that she found these comments to be "demeaning" and "belittling."

The DOE called eleven witnesses, including Asato.  Four of DOE's exhibits and twenty-five of HGEA's exhibits were received into evidence for consideration by the arbitrator. Trask did not make an argument brought to his attention by Asato regarding a possible violation of Fourth Amendment protections against unreasonable searches and seizures.

At the conclusion of the arbitration proceedings, the arbitrator stated:

> I want to thank counsel for the parties at this time, Miriam on behalf of the Employer, and [Trask] on behalf of the Union and [Asato], and my gratitude is based upon the civility that you both exercised throughout the hearing, and the hard work that you've done in preparing exhibits, all of which benefit the Arbitrator in understanding the positions and presentations of each party.

The arbitrator issued the June 21, 2019 Arbitrator Decision and Award (**Arbitrator Decision**).  The Arbitrator Decision stated:

> The parties were afforded a full and fair opportunity to present evidence and examine witnesses at the hearing, and to submit written arguments after the hearing.  The Arbitrator commends Mr. Trask and Ms. Loui for their superior representation of their respective clients.

The arbitrator found and concluded that (1) DOE did not violate the terms of the CBA when it terminated Asato and (2) Asato was terminated for proper cause.  Accordingly, the arbitrator dismissed the grievance and sustained Asato's termination.

On July 9, 2019, HGEA sent the Arbitrator Decision to Asato.  HGEA did not move to vacate the Arbitrator Decision.

On October 4, 2019, Asato filed a second Prohibited Practices Complaint (**2019 PPC**) against the HGEA and the DOE. Asato asserted that HGEA violated Hawaii Revised Statutes (**HRS**) § 89-13(b)(1), (4), and (5) (2012) by treating Asato with contempt and retaliating against her for bringing her prior 2017 PPC against HGEA.  Asato alleged that HGEA subverted the arbitration process, *i.e.*, "threw the fight," in bad faith. Asato pointed to her treatment during the arbitration preparation, the arbitration result, HGEA's failure to move to set aside the arbitration, and Trask's comments made to her during the car rides and from the arbitration proceedings.  Asato alleged an HRS § 89-13(a)(8) claim against the DOE for willful and wrongful discharge without good cause.  Asato sought reinstatement, backpay, and interest from the DOE and consequential damages from HGEA.

The Board held an evidentiary hearing on the 2019 PPC on November 13, 2019, and November 20, 2019.  Asato called five witnesses, including herself, Trask, Chun, and Calvin Nomiyama (**Nomiyama**), who was the superintendent who terminated Asato and one of DOE's witnesses in the arbitration.  During the 2019 PPC hearing, Nomiyama did not remember Trask's name or recall the questions asked of him during the arbitration.  Nomiyama explained that he did not know Trask's name because Trask did not introduce himself before cross-examining Nomiyama.  Asato's counsel attempted to have Nomiyama identify Trask's photograph,

but HGEA's counsel objected.  Nomiyama was later excused without identifying Trask's photo.

Chun testified in direct examination that he "didn't see anything out of the ordinary" in the interactions between Trask and Asato during the December 10, 2018 arbitration preparation meeting.  On cross-examination, Chun further testified he had sat in numerous arbitrations in his 30-plus years and that there was nothing unusual about Asato's representation.

Asato testified regarding her interactions with Trask, notably including his statements during their car rides to and from arbitration.

Regarding HGEA's failure to move to vacate the arbitration award, Trask testified that there was no grounds for vacating an arbitration award.  Trask further testified that if he had filed a frivolous motion to vacate the arbitration award, he could have "exposed [his] client to fees, along with going to the ODC [himself]."

Regarding the decision to not call witnesses at the arbitration, Trask explained:

> We always consider witnesses.  The problem is, at the arbitration stage just about everything has been decided by the Union already.  An action is taken, a grievant has filed, then go through Step 1, Step 2, wherever it is, a lot of information has exchanged and disclosed and it is almost in concrete by the time I get the case.  So while I may have considered if there was no tangential reason or relationship to the file and HGEA didn't notice anybody, I might be hard pressed to call a new witness, but I consider it.

Regarding Trask's comments to Asato, Trask explained that he was attempting to use the car rides to prepare Asato for

cross-examination:

> Okay.  These rides became imperative for my preparation in that Ms. Asato was in denial.  When I asked her, there are 14 months of DOE e-mails that are racist, in my opinion, too, how is she going to answer all of those in cross-examination, because I was very worried about cross-examination.

> Arbitrators love to hear from the grievant, and the exposure is, is once I put them on, they're now subject to cross-examination, and that part I'm not in control of.  So I was constantly worried how she would answer if someone went through the 14, 16 months of e-mails one by one, what would be her answer.

> And her answers to me, and the many times I tried that, was to talk about something else, a distraction.  Can I file suit against them, can I sue them for this, can I sue them -- constant denial, deviation from what I -- so I probably told her you ought to get a law degree, go learn it, go learn this stuff, I'm not your private attorney for that.

Regarding the decision to forego making a Fourth Amendment constitutional argument, Trask stated, "I considered it, but this is not the place to raise -- a grievance arbitration before an arbitrator's not the place to raise an issue of constitutionality."  Trask further explained that he did not brief the Fourth Amendment issue because "the grievance defines my issues, the grievance.  I cannot modify the grievance six years after it's been filed."

On November 20, 2019, Asato rested her case-in-chief. HGEA moved for a directed verdict; Asato filed an opposition.  On May 5, 2021, the Board filed its Decision No. 504 Findings of Fact, Conclusions of Law, Decision and Order (**Decision No. 504**), which granted HGEA's motion based on "Asato's failure to meet her burden of proof after the conclusion of her case-in-chief."

On June 4, 2021, Asato appealed Decision No. 504 to the Circuit Court.  After briefing, the Circuit Court held oral

arguments on December 17, 2021.  On April 18, 2022, the Circuit Court entered the Order Denying Agency Appeal.  The Circuit Court made Findings of Fact (**FOFs**), including now challenged FOFs:

> 24.  Ms. Asato raised a Fourth Amendment issue.  The Board has no jurisdiction to render a decision on constitutional issues.  Further, constitutional analyses are unnecessary for the Board to decide the statutory issues presented by prohibited practice complaints.
>
> 25.  The Board properly dismissed Ms. Asato's HRS § 13(a)(8) claim against DOE prior to a hearing on the merits, because the Board lacked jurisdiction.

The Circuit Court's challenged Conclusions of Law (**COLs**) are as follows:

> 8.  Ms. Asato was terminated for proper cause in accordance with the Unit 3 CBA.
>
> 9.  Following a hearing on the merits, the Board properly dismissed Ms. Asato's HRS § 13(a)(8) claim against DOE for lack of standing.
>
> 10.  The Board was not required to address Ms. Asato's constitutional claims because the Board lacked jurisdiction.
>
> 11.  The Board properly dismissed Ms. Asato's HRS § 89-13(b)(5) claim because HGEA did not breach its duty of fair representation.
>
> 12.  The Board properly dismissed Ms. Asato's HRS § 89-13(b)(1) claim because HGEA did not breach its duty of fair representation.
>
> 13.  The Board properly dismissed Ms. Asato's HRS § 89-13(b)(1) claim because HGEA's conduct toward her was not arbitrary, discriminatory, or in bad faith.
>
> 14.  The Board correctly granted HGEA's motion for a directed verdict because Ms. Asato failed to meet her burden.
>
> 15.  Ms. Asato failed to meet her burden of proving a willful violation of HRS § 89-13(a)(8) as to DOE.
>
> 16.  Ms. Asato failed to meet her burden of proving a willful violation of HRS §§ 89-13(b)(1) and (5) as to HGEA.

On May 13, 2022, the Circuit Court entered the Judgment.  On May 17, 2022, Asato filed a Notice of Appeal.

## II.  POINTS OF ERROR

Asato asserts three points of error in this appeal,

contending that the Circuit Court erred in:  (1) affirming Decision No. 504 because the Board incorrectly granted HGEA's Motion for Directed Verdict; (2) entering FOFs 24 and 25;[3] and (3) entering COLs 8 to 16, inclusive.

III. APPLICABLE STANDARD OF REVIEW

"Review of a decision made by [a] circuit court upon its review of an agency's decision is a secondary appeal.  The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) [1993] to the agency's decision." Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 120, 424 P.3d 469, 475 (2018) (citing Paul's Elec. Serv., Inc. v. Befitel, 104 Hawaiʻi 412, 416, 91 P.3d 494, 498 (2004) (brackets in original)).  Pursuant to HRS § 91-14(g) (Supp. 2023),[4] an agency's conclusions of law are reviewed de

---

[3]     A circuit court reviewing an agency's final decision and order "does not make findings of fact; it determines whether the agency's findings of fact were clearly erroneous in view of the reliable, probative, and substantial evidence in the record." Sierra Club v. Bd. of Land & Nat. Res., 154 Hawaiʻi 264, 284, 550 P.3d 230, 250 (App. 2024), cert. granted, SCWC-22-0000516, 2024 WL 3378462 (Haw. July 11, 2024) (citing HRS § 91-14(g)(5); Diamond v. Dobbin, 132 Hawaiʻi 9, 24, 319 P.3d 1017, 1032 (2014)).  However, the Circuit Court's FOFs here are limited to describing the procedural facts of the Board proceedings.  Accordingly, any such error is harmless.  Hawaiʻi Rules of Civil Procedure Rule 61.

[4]          HRS § 91-14(g) provides:

**§ 91-14 Judicial review of contested cases.**

. . . .

(g)   Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1)   In violation of constitutional or statutory

(continued...)

*novo*, while under HRS § 91-14(g)(5), an agency's factual findings are reviewed for clear error. Paul's Elec. Serv., 104 Hawaiʻi at 420, 91 P.3d at 502 (internal citation omitted).

IV. DISCUSSION[5]

A. Asato's HRS § 89-13(b)(5) Claim

HRS § 89-13(b)(5) provides: "It shall be a prohibited practice for . . . an employee organization or its designated agent wilfully to . . . [v]iolate the terms of a collective bargaining agreement." Asato's claims against HGEA centered around the preparation and conduct of the grievance arbitration. Article 11(G) of the CBA provides for Step 3 Arbitration of the HGEA grievance procedure. The Board dismissed Asato's HRS § 89-13(b)(5) claim because (1) Article 11(G) procedures "are not procedures that involve employees, as arbitration is a matter between the union and the employer," and (2) "there is nothing in Article 11 that speaks to discrimination or retaliation." Asato does not challenge either of the Board's reasons for dismissal,

---

[4](...continued)
provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

[5] The Argument section of Asato's opening brief only loosely follows her points of error.

but rather asserts that the Board should not have dismissed her HRS § 89-13(b)(5) because the Board acknowledged HGEA's duty of fair representation.

Article 11 of the CBA itself does not address or provide HGEA's duty of fair representation.  Accordingly, Asato's arguments regarding HGEA's alleged breach of the duty of fair representation fall under her HRS § 89-13(b)(1) claim, not her HRS § 89-13(b)(5) claim, and are addressed below.

B.    Asato's HRS § 89-13(b)(1) Claim

HRS § 89-13(b)(1) provides:  "It shall be a prohibited practice for a public employee or for an employee organization or its designated agent wilfully to . . . [i]nterfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter[.]"  Asato framed her HRS § 89-13(b)(1) claim primarily as a breach of the duty of fair representation claim, and the Board conducted its analysis accordingly.

The Hawaiʻi Supreme Court has held:

> [A]n employee who is prevented from exhausting his or her contractual remedies may bring an action against an employer for breach of a collective bargaining agreement "provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance."  Vaca v. Sipes, 386 U.S. at 186 (1967).
>
> A union breaches its duty of good faith when its conduct towards a member of a collective bargaining unit is arbitrary, discriminatory, or in bad faith.  Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998); DelCostello v.Int'l Bhd. Of Teamsters, 462 U.S. at 164; Vaca, 386 U.S. at 190.

Poe v. Hawaiʻi Lab. Rel. Bd., 105 Hawaiʻi 97, 103-04, 94 P.3d 652, 658-59 (2004) (cleaned up).

The Board adopted the Ninth Circuit's two-step analysis for its breach of the duty of fair representation analysis.[6]  In Moore v. Bechtel Power Corp., the Ninth Circuit held:

> Unions have broad discretion to act in what they perceive to be their members' best interests.  This court has construed the unfair representation doctrine in a manner designed to protect that discretion.  In our application of this doctrine, we ask first whether the act in question involved the union's judgment, or whether it was "procedural or ministerial."  If it is a union's judgment that is in question, as it is in this case, the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith.  Arbitrariness alone would not be enough.  Only when the challenged conduct was procedural or ministerial does arbitrariness become controlling.

840 F.2d 634, 636 (9th Cir. 1988) (citations omitted).

"Whether a union acted arbitrarily, discriminatorily or in bad faith requires a separate analysis, because each of these requirements represents a distinct and separate obligation." Simo v. Union of Needletrades, Indus. & Textile Emps., 322 F.3d 602, 617 (9th Cir. 2003) (citation omitted).

Asato argues that HGEA's conduct was arbitrary because HGEA lacked a rational basis to treat her with contempt as it proceeded through the arbitration process; and that HGEA subverted the arbitration process, acting in bad faith by "throwing the fight."

The Ninth Circuit has discussed examples of when a union acts arbitrarily, including when a union fails to:

> (1) disclose to an employee its decision not to submit her grievance to arbitration when the employee was attempting to determine whether to accept or reject a settlement offer from her employer; (2) file a timely grievance after it had decided that the grievance was meritorious and should be filed; (3) consider individually the grievances of particular employees where the factual and legal differences among them were significant; or (4) permit employees to

---

[6]      The supreme court has stated, "[t]his court has used federal precedent to guide its interpretation of state public employment law." Poe, 105 Hawai'i at 101, 94 P.3d at 656.

13

> explain the events which led to their discharge before
> deciding not to submit their grievances to arbitration.

Peterson v. Kennedy, 771 F.2d 1244, 1254 (9th Cir. 1985) (cleaned up).  A union does not act in an arbitrary manner when the union's challenged conduct involves the union's judgment as to how best to handle a grievance.  Id.  A union's conduct is not arbitrary simply because it erred "in evaluating the merits of a grievance, in interpreting particular provisions of a collective bargaining agreement, or in presenting the grievance at an arbitration hearing."  Id.

Here, the Board determined that HGEA's challenged conduct did not "fall under the umbrella of procedural or ministerial actions" because "[t]he way that a union chooses to approach an arbitration is a matter of judgment."  On appeal, Asato does not dispute the Board's conclusion that the challenged conduct was not procedural or ministerial but rather involved the union's judgment.  Asato merely reasserts that HGEA's conduct was arbitrary because it lacked a rational basis for treating Asato with contempt, it subverted the arbitration process, and it retaliated against Asato.  However, if a union's judgment is in question, "[a]rbitrariness alone would not be enough" for a plaintiff to prevail in their breach of duty of fair representation claim.  See Moore, 840 F.2d at 636.  Rather, "the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith."  Id.  Accordingly, the Board did not render a separate determination as to whether HGEA's conduct was arbitrary.  Instead, the Board stated that it would address

14

the substance of Asato's claim in its discussion of HGEA's alleged bad faith.

Asato also argues that she was entitled to non-discriminatory/non-retaliatory union representation. Discriminatory conduct can be established by "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am. v. Lockridge, 403 U.S. 274, 301 (1971).  A union's discrimination on the basis of union membership can serve as the basis for a breach of the duty of fair representation claim.  Simo, 322 F.3d at 619.  A union's discriminatory conduct may be established with evidence that the union sought to grant benefits to some members of the bargaining unit that it denied to others, treated similarly situated individuals differently, or sought to punish workers who brought a lawsuit against the union.  Id.

Here, the Board determined that Asato had not presented any evidence demonstrating discrimination on the part of HGEA, noting that Asato did not specifically allege any discrimination on the part of HGEA beyond asserting that she was entitled to "non-discriminatory/non-retaliatory union representation." Similarly, on appeal, Asato restates her entitlement to non-discriminatory/non-retaliatory union representation and provides the legal standard for discriminatory conduct, but Asato points to no evidence and makes no specific arguments supporting her assertion of discriminatory conduct.  We cannot conclude that the

Board clearly erred in determining that Asato failed to demonstrate discrimination.

In addition, Asato argues that the Board erred in not finding that HGEA acted in bad faith by retaliating against her for exercising her collective bargaining rights.

"To establish that the union's exercise of judgment was in bad faith, the plaintiff must show 'substantial evidence of fraud, deceitful action or dishonest conduct.'" Beck v. United Food & Com. Workers Union, Loc. 99, 506 F.3d 874, 880 (9th Cir. 2007) (quoting Lockridge, 403 U.S. at 299).  "[M]ere negligence and erroneous judgment calls cannot, by themselves, support an inference of bad faith." Demetris v. Transp. Workers Union of Am., AFL-CIO, 862 F.3d 799, 808 (9th Cir. 2017) (citation omitted).  Courts should afford substantial deference to the union's decisions regarding whether and to what extent to pursue a particular grievance. Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270, 1273 (9th Cir. 1983).  A disagreement between a union and an employee over a grievance does not alone constitute evidence of bad faith, even when the union is ultimately shown to be mistaken. Moore, 840 P.2d at 637.

Here, the Board found that Asato had not proven that HGEA's judgment calls show substantial evidence of fraud, deceit, or dishonest conduct.  On appeal, Asato argues that the Board erred in this finding because she had presented sufficient facts to prove that HGEA acted in bad faith in the exercise of its judgment.  Asato points to the result of the arbitration and HGEA's failure to move or set aside the arbitration award as

16

evidence that HGEA retaliated against her in bad faith.  Asato cites to no authority supporting the proposition that the loss of a grievance arbitration constitutes bad faith and she fails to identify any grounds on which HGEA should have moved to vacate the arbitration award.  We conclude this argument is without merit.

Asato also argues that Trask's decision not to call witnesses at the arbitration hearing is evidence of bad faith.  However, in light of Trask's testimony concerning his rationale, and other actions in preparation for and conduct of the arbitration hearing, we cannot conclude that the Board clearly erred in rejecting this argument.

In addition, Asato argues that the Board should have found that she received a sham hearing because Nomiyama, one of the DOE's witnesses in the arbitration, did not recognize Trask, remember Trask's name, or recall questions asked during arbitration.  This argument is without merit.

Finally, Asato argues that Trask's comments to her during arbitration preparation was evidence of bad faith because Trask treated her with contempt.  However, the Board expressly addressed this issue, stating, "[s]ometimes, parties may fall short of the level the Board would expect or hope for; however, falling short of that level of decorum and civility is not enough to sustain a breach of the duty of fair representation."  The Board further reasoned:

> Trask's conduct during the preparation for the arbitration while, perhaps, not the most civil, was not dishonest and did not show evidence of fraud or deceit. Some of Trask's answers to Asato and positions that Trask

> took may have been disappointing or frustrating to Asato.
> However, that does not mean that his conduct rose to the
> level of a breach of the duty of fair representation.

We conclude that the evidence supported the Board's finding that Trask's comments did not establish fraud or deceit, rising to the level of a breach of the duty of fair representation.  Therefore, we further conclude the Board did not clearly err in rejecting Asato's claim that HGEA acted in bad faith.

C.    Asato's Constitutional Claims

Asato argues, variously, that her contention that her Fourth Amendments rights were violated should have been determined by the Board.  These arguments are without merit.  The supreme court has expressly held that the Board lacks jurisdiction to consider constitutional issues.  See Hawaii Gov't Emps. Ass'n v. Lingle, 124 Hawaiʻi 197, 207,  239 P.3d 1, 11 (2010).

D.    Asato's Other Arguments

Asato challenges the Circuit Court's FOFs 24 and 25, and COLs 8 to 16.  Most of Asato's arguments are addressed above and will not be repeated here.

Asato further argues that she met her burden of proving that she was not terminated for proper cause in accordance with the BU 03 CBA.  However, the determination that Asato was terminated for proper cause was made in the Arbitrator Decision, which is not properly before us in this appeal.

18

Asato also argues that she met her burden of proving that the Board improperly dismissed her HRS § 89-13(a)(8)[7] claim against the DOE because she did not lack standing and the Board did not lack jurisdiction.  The supreme court has explained that when a union has breached its duty of fair representation, an employee may bring an action against their employer:

> [S]uch an action consists of two separate claims: (1) a claim against the employer alleging a breach of the collective bargaining agreement and (2) a claim against the union for breach of the duty of fair representation. DelCostello, 462 U.S. at 164.
>
>> [T]he two claims are inextricably interdependent.  To prevail against either the company or the Union, employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.  The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.
>
> Id. at 164-65; see also DiGuilio v. Rhode Island Bhd. of Corr. Officers, 819 A.2d 1271, 1273 (R.I. 2003) (**without a showing that the union breached its duty of fair representation, the employee does not have any standing to contest the merits of his contract claim against the employer in court**).

Poe, 105 Hawaiʻi at 102, 94 P.3d at 657 (emphasis added) (cleaned up).

Here, the Board concluded that because it determined that Asato did not prove HGEA's breach of its duty of fair representation, she lacked standing to pursue her claim against the DOE.  As discussed above, the Board did not err in its determination that Asato failed to establish that HGEA breached its duty of fair representation.  Accordingly, the Board did not err in concluding that Asato could not further prosecute her HRS

---

[7]     HRS § 89-13(a)(8) provides, "It shall be a prohibited practice for a public employer or its designated representative wilfully to . . . [v]iolate the terms of a collective bargaining agreement[.]"

§ 89-13(a)(8) claim against the DOE. See Poe, 105 Hawaiʻi at 102, 94 P.3d at 657. Therefore, the Circuit Court did not err in affirming the Board's dismissal of Asato's claim against the DOE.

V. CONCLUSION

For these reasons, the Circuit Court's May 13, 2022 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, February 14, 2025.

On the briefs:

Shawn A. Luiz,
for Complainant-Appellant/
Appellant.

James E. Halvorson,
Miriam P. Loui,
Deputy Attorneys General,
Department of the Attorney
General,
for Respondent-Appellee/Appellee
Department of Education,
State of Hawaiʻi.

Vladimir Devens,
Keani Alapa,
(Law Offices of Vladimir P.
Devens, LLC),
for Respondent-Appellee/Appellee
Hawaii Government Employees
Association.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge